IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ASHLEY THOMPSON and DEBORAH and )
DAVID SILLS, *on behalf of themselves and all* )
*others similarly situated*, )
)
        Plaintiffs, )
) CIVIL ACTION NO. 3:10-CV-312
v. ) JUDGE KIM R. GIBSON
)
ALTOONA HOUSING AUTHORITY and *its* )
*Executive Director*, CHERYL JOHNS, *in her* )
*individual capacity*, and JOHN or JANE DOE, )
)
        Defendants. )

## MEMORANDUM AND ORDER OF COURT

### I. SYNOPSIS

This matter comes before the Court on Plaintiffs' Motion for Class Certification (Doc. No. 86), which Defendants oppose. For the reasons that follow, the Court will **GRANT** the motion.

### II. JURISDICTION AND VENUE

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Venue is proper under 28 U.S.C. § 1391(b).

### III. BACKGROUND

This action stems from the allegedly improper termination of Section 8 rental assistance benefits[1] of Plaintiffs Ashley Thompson, Deborah Sills, and David Sills (collectively, "Plaintiffs") by Defendants Altoona Housing Authority ("AHA") and its executive director,

---

[1] The federal Section 8 rental assistance program "provides rent subsidies for low- and moderate-income participants so that they can afford to lease privately owned housing units." *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 544 n.4 (3d Cir. 2006) (citing *Truesdell v. Philadelphia Hous. Auth.*, 290 F.3d 159, 161-62 (3d Cir. 2002)).

1

Cheryl Johns (collectively, "Defendants"). The scope of this contentious matter has grown, however, and Plaintiffs now seek to represent past, present, and future participants in Defendants' Section 8 Housing Choice Voucher Program in a class action to declare unlawful and enjoin various benefit termination policies and practices employed by AHA. The Court will briefly discuss the relevant background of this case before addressing the pending motion for class certification.

In an effort to prevent lease termination and eviction from their federally-subsidized apartments, Plaintiffs commenced this suit by filing motions to proceed *in forma pauperis* (Doc. No. 1) and a proposed complaint (Doc. No. 1-3) on December 15, 2010. The complaint alleges that Plaintiffs' participation in the Section 8 Housing Choice Voucher Program (the "Program") was terminated pursuant to AHA's policy or practice of "terminating federal housing benefits to program participants without providing an opportunity to object to the termination in a hearing before an objective decision maker with a decision based solely on the evidence presented at the hearing." (*Id.* at ¶¶ 1-2). As a remedy, the complaint requests that this Court declare unlawful and enjoin this practice as violative of the Due Process Clause of the Fourteenth Amendment to the Constitution; the United States Housing Act of 1937, 42 U.S.C. § 1437 *et seq.*, and its implementing regulations; and 42 U.S.C. § 1983. (*Id.* at ¶¶ 1-3).

The next day, Plaintiffs filed a motion for temporary restraining order and preliminary injunction (Doc. No. 2) requesting that the Court compel Defendants to restore Plaintiffs' rental assistance benefits pending ultimate resolution of this litigation. On December 17, 2010, the Court denied Plaintiffs' motion with respect to the temporary restraining order only and scheduled a preliminary injunction hearing for December 27, 2010. (Doc. No. 6). Before the

2

hearing was conducted, the parties entered into a stipulation whereby Defendants "immediately and pending final resolution of this litigation restored the Section 8 Housing Choice Voucher benefits of Plaintiffs" (Doc. No. 11 at 1), and Plaintiffs withdrew their motion for preliminary injunction. (Doc. No 12 at 1).

Plaintiffs filed an amended complaint (Doc. No. 17) on February 3, 2011. Defendants responded with a motion to dismiss contending, *inter alia*, that Plaintiffs improperly sought relief on behalf of "other, unspecified, non-party 'participants'" in the Program. (Doc. No. 18 at ¶ 5). Plaintiffs filed a motion for leave to amend their complaint (Doc. No. 21), which the Court granted on March 14, 2011. (Doc. No. 32). Plaintiffs subsequently filed their second amended complaint "on behalf of themselves and all others similarly situated, seek[ing] to declare unlawful and enjoin certain policies, customs or practices . . . of the Defendants which result in the termination of federal housing benefits to program participants in violation of federal law." (Doc. No. 34 at ¶ 1). Defendants filed an answer (Doc. No. 35) to this class action complaint on April 7, 2011. Discovery regarding the issue of class certification was thereafter conducted.

On January 9, 2012, Plaintiffs filed the instant motion (Doc. No. 86) seeking to certify a class consisting of all Program participants "who were terminated or otherwise injured since March 25, 2009 pursuant to the policies alleged in this matter, all participants who are presently subject to these practices and all who in the future will be subject to these policies." (*Id.* at ¶ 2). The motion has been fully briefed, (see Doc. Nos. 87, 88, 89, 90, and 93), and is now ripe for disposition.

## IV. LEGAL STANDARD

As this Court previously explained, the essential purpose of a "class certification decision is to assess the necessity and efficiency of adjudicating claims as a group. Without sufficient issues in common, handling claims as a class action would accomplish nothing more than creating unnecessary procedural complications." *Brothers v. Portage Nat'l Bank*, No. 3:06-94, 2009 U.S. Dist. LEXIS 109769, *20-21 (W.D. Pa. Mar. 24, 2009) (citing *Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994)); see also *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 n.6 (3d Cir. 2008) ("A class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.") (citation omitted). Accordingly, a plaintiff seeking class certification bears the burden of demonstrating, by a preponderance of the evidence, that class certification is appropriate. *Reardon v. ClosetMaid Corp.*, No. 08-1730, 2011 U.S. Dist. LEXIS 45373, *6 (W.D. Pa. Apr. 27, 2011) (citing *Hydrogen Peroxide*, 552 F.3d at 307). To make such a showing, a plaintiff must satisfy the four "prerequisites" of FED. R. CIV. P. 23(a): numerosity, commonality, typicality, and adequacy. A plaintiff must also show that the class fits one of the Rule 23(b) "types." *Behrend v. Comcast Corp.*, 655 F.3d 182, 189 (3d Cir. 2011).

Before making a decision regarding class certification, a district court must conduct a rigorous analysis of the evidence and arguments, which requires a thorough examination of the factual and legal allegations and may include a preliminary inquiry into the merits of the claims. *Id.*, 655 F.3d at 190 (citations and quotation marks omitted). This merits inquiry is limited, however, because "a district court may inquire into the merits of the claims presented in order to determine whether the requirements of Rule 23 are met, but not in order to determine whether

4

the individual elements of each claim are satisfied." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 305 (3d Cir. 2011). Thus, at this certification stage, the Court is focused on the requirements of Rule 23, not whether a plaintiff will ultimately prevail. See *id.* ("An analysis into the legal viability of asserted claims is properly considered through a motion to dismiss under Rule 12(b) or summary judgment pursuant to Rule 56, not as part of a Rule 23 certification process.") (citations omitted).

## V. DISCUSSION

Plaintiffs seek to certify a class of past, present, and future Program participants in an effort to declare unlawful and enjoin various benefit termination policies or practices allegedly employed by Defendants. Specifically, Plaintiffs object to the following seven practices or policies:

(1) notifying participants that only written evidence would be considered at a benefit termination hearing;

(2) notifying participants that it is their burden at the hearing to prove why they should not be terminated;

(3) actually shifting the burden of proof at the hearing, thereby requiring participants to disprove the allegations against them;

(4) terminating benefits based solely on uncorroborated hearsay;

(5) using a partial, non-neutral decision maker at the hearing;

(6) basing termination decisions in part on evidence collected after the hearing was conducted;

(7) failing to comply with AHA's own rules and regulations when terminating benefits.

(See Doc. No. 87 at 8-9). Because "[t]he named Plaintiffs experienced each of the policies alleged in this case," Plaintiffs claim that the Rule 23(a) prerequisites are met. (*Id.* at 12). Plaintiffs also contend that Rule 23(b)(2) is satisfied because they seek injunctive and

5

declaratory relief regarding conduct which is generally applicable to the proposed class. (*Id.* at 3).

Defendants object to class certification contending that the alleged policies do not exist and that none of the proposed class members has actually been harmed. (See Doc. No. 88 at 1; Doc. No. 93 at 2). Thus, they argue, Plaintiffs cannot meet their burden of establishing the Rule 23 requirements. The Court will address these requirements *ad seriatim*.

### A. Numerosity

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable[.]" FED. R. CIV. P. 23(a)(1). "Although there is no 'magic number' which satisfies the numerosity requirement, the [Third Circuit] has noted that 'generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.'" *Reardon*, 2011 U.S. Dist. LEXIS 45373 at *12 (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)). Moreover, the following factors—apart from the number of members—weigh on impracticability: judicial economy, the geographic dispersion of members of the class, the relative financial resources of the class members, and the claimants' ability to bring individual actions. *Massie v. United States Dep't of Hous. & Urban Dev.*, 246 F.R.D. 490, 493 (W.D. Pa. 2007) (citing *Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107, 116-17 (D. N.J. 2002)).

Plaintiffs contend that the numerosity requirement is satisfied because they have identified thirty-three households[2] which have already had their Program benefits terminated

---

[2] In their filings, Plaintiffs do not identify how many individuals comprise these households. Therefore, the Court is currently unaware of the precise number of individuals who have had their benefits terminated. However, it is likely that many of these households contain multiple individuals. The second amended complaint alleges that the three members of the Thompson household and four members of the Sills household face eviction as a result of benefit

6

pursuant to the allegedly unlawful practices. Plaintiffs further contend that joinder would be impracticable for the hundreds of present and future Program participants facing similar termination if the Court does not address these policies. (See Doc. No. 87 at 5). Defendants concede that the identified households received the hearing notice which is at issue in this case, but claim that smaller subsets of this group were subjected to the other allegedly unlawful practices. (See Doc. No. 88 at 8-10). For example, Defendants note that only fifteen identified Program participants attended a hearing, and in only seven of those instances, did the hearing officer gather information after the hearing was concluded. (*Id.*). Thus, Defendants posit, only these individuals could have experienced the practices which form the basis for five of Plaintiffs' proposed class claims.

Instantly, the Court finds that Plaintiffs have met their burden of establishing the numerosity requirement by identifying thirty-three households[3] terminated pursuant to some or all of the policies giving rise to the class claims. Given the identification of these aggrieved individuals, and the fact that hundreds of present and future Program participants also face potential termination pursuant to these same policies, Plaintiffs have demonstrated that the potential number of class members satisfies Rule 23(a)(1). See *Reardon*, 2011 U.S. Dist. LEXIS 45373 at *12 (quoting *Stewart*, 275 F.3d at 226-27). Apart from sheer numbers, other factors support the finding that joinder of all affected parties would be impracticable. Plaintiffs lack the financial resources to afford even suitable housing (hence their enrollment in the Program in the first place), and, therefore, it would be impracticable if not financially impossible for them to

---

termination. (See Doc. No. 34 at ¶¶ 14-15). Even if the remaining thirty-one households contain only one member each, the total number of class members would be thirty-eight.

[3] As noted supra, there are at least thirty-eight individuals in those households, although the actual figure is likely substantially higher.

7

bring individual actions to enforce their rights. Moreover, judicial economy favors a single adjudication as to the legality of Defendants' practices or policies over a multiplicity of suits seeking answers to the same legal questions.

While Defendants are correct that Plaintiffs have identified fifteen or fewer terminated households who could have been subjected to *all* of the class claims raised, this argument against numerosity fails to account for the hundreds of current and future Program participants potentially subject to the challenged practices. The injunction or declaration sought by Plaintiffs regarding Defendants' policies impacts these participants as well, and joinder of such a large group is certainly impracticable. Accordingly, the Court finds that Plaintiffs have satisfied Rule 23(a)(1).

### B. Commonality

Plaintiffs must also establish commonality under Rule 23(a)(2), which requires that "there are questions of law or fact common to the class[.]" FED. R. CIV. P. 23(a)(2). As the Third Circuit explained, "[c]ommonality does not require an identity of claims or facts among class members; instead, the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 184 (3d Cir. 2001) (citations and internal quotation marks omitted).

Here, the central factual and legal questions are common to the Plaintiffs and the prospective class members. To wit, the Court must ultimately determine: (1) what termination practices Defendants engaged in and the specifics of those practices; and (2) whether such practices are permissible under federal law. Plaintiffs, therefore, have demonstrated commonality under Rule 23(a)(2).

## C. Typicality

Rule 23(a)(3) imposes the typicality requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" FED. R. CIV. P. 23(a)(3). As the Third Circuit summarized:

> [t]o evaluate typicality, we ask whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class. Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.

*Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (internal citations and quotation marks omitted).

In this action, Plaintiffs' claims are typical of the entire class. First, these claims stem from the practices allegedly employed by Defendants to terminate Program benefits on a class-wide basis. Second, the named Plaintiffs and absentee class members seek relief under the same legal theory—that Defendants' practices violate due process. Additionally, the incentives of the named Plaintiffs are aligned with those of the class: all members seek protection from the same potentially rights-violating termination practices. The Court, therefore, finds that Plaintiffs have established the typicality requirement.

## D. Adequacy

To satisfy Rule 23(a)(4), Plaintiffs must demonstrate that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). As the Third Circuit recently explained, the adequacy requirement has two components: (1) counsel must be sufficiently qualified and experienced to represent the class; and (2) the interests and incentives of the representative plaintiffs and the absentees must be sufficiently aligned. *Dewey v.*

*Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012).

The Court finds that both of these requirements are met in the case *sub judice*. Counsel of record for Plaintiffs have ample experience litigating class actions related to federally-assisted housing programs. (See Doc. No. 87 at 13) (listing cases). The court also notes that they have vigorously litigated this matter to date, and that Defendants have not specifically challenged their qualifications. With regards to the second component and as discussed above, the interests and incentives of the named Plaintiffs and the absentees are sufficiently aligned: enjoining termination practices and ensuring due process protects both groups from potentially unlawful benefit termination by Defendants. Both groups seek the same relief, under the same legal theory, and under similar factual circumstances. Therefore, the Court finds that Plaintiffs have satisfied Rule 23(a)(4).

### E.   Class Type

Plaintiffs claim that class certification is appropriate for this type of action pursuant to Rule 23(b)(2), under which a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" FED. R. CIV. P. 23(b)(2); see also *Sullivan*, 667 F.3d at 296. Rule 23(b)(2) is "almost automatically satisfied in actions primarily seeking injunctive relief." *Massie*, 246 F.R.D. at 495 (quoting *Neal*, 43 F.3d at 58). As the Third Circuit explained, "[w]hat is important is that the relief sought by the named plaintiffs should benefit the entire class." *Neal*, 43 F.3d at 59; see also *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011) ("The key to the [Rule 23](b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such

10

that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.") (internal citations and quotation marks omitted).

Instantly, the named Plaintiffs seek to enjoin and declare unlawful various practices employed by Defendants. Such a declaration and/or injunction would not simply benefit the named Plaintiffs; instead, it would benefit the entire class—those Program participants already terminated and the current and future Program participants potentially subject to benefit termination pursuant to these allegedly unlawful practices. While Defendants contend that these policies were not employed systematically or institution-wide, (see Doc No. 88 at 19), this contention is undercut by Plaintiffs' identification of thirty-three aggrieved households. Protecting present and future Program participants from similar practices is wholly appropriate under Rule 23(b)(2).

Quite simply, the alleged practices are either unlawful with respect to all class members or none of them. Thus, this is an appropriate Rule 23(b)(2) class type because the declaratory and injunctive relief sought is indivisible in nature. See *Wal-Mart*, 131 S. Ct. at 2557. Whether or not these alleged practices actually do violate federal law is a question for a later stage in this litigation, but for now, the Court finds that Plaintiffs have satisfied Rule 23(b)(2).

### F. Defendants' Arguments

Defendants raise various arguments in their filings which do not specifically relate to the class certification requirements of Rule 23. The Court will address these arguments in turn.

First, Defendants argue that "the alleged 'policies' do not exist." (Doc. No. 88 at 1). For example, Defendants contend that their hearing officers were not biased and the burden of proof never shifted onto program participants. (See *id.* at 12-13). These arguments, however, question

the merits of Plaintiffs' claims, and such merits challenges are properly addressed at summary judgment, not at the class certification stage. See *Sullivan*, 667 F.3d at 305. While the Court will not deny class certification on this basis, Defendants are free to raise these same arguments at the appropriate time.

Defendants raise a similar challenge to the merits in a subsequent brief, again arguing that Plaintiffs' claims must fail because no one was actually harmed by the alleged practices. (See Doc. No. 93). While Defendants rephrase their argument as a challenge to Plaintiffs' standing to file suit, the fact remains that Defendants request that this Court fully evaluate the merits of Plaintiffs' claims. While Defendants may ultimately prevail on such merits challenges, the Court may not resolve these factual disputes at this time. See *Sullivan*, 667 F.3d at 305.

Defendants also contend that Plaintiffs' motion for class certification improperly raises three new class claims which were not pleaded in the class complaint. Specifically, Defendants object to the inclusion of Plaintiffs' claims that: (1) the burden of proof actually shifted at the hearings; (2) the hearing officers were biased; and (3) the terminations were based solely on hearsay. (See Doc. 88 at 11). Defendants' argument fails with respect to the burden shifting and bias claims because they were, in fact, expressly pleaded in the complaint. Namely, Plaintiffs detailed the allegedly unlawful policies employed by Defendants including "improperly shifting the burden of proof at informal hearings onto participants to disprove [AHA]'s allegations[,]" and failing to provide participants with "an opportunity to object in a hearing before a *neutral decision maker*[.]" (Doc. No. 34 at ¶ 1) (emphasis added). These allegations clearly encompass the burden-shifting and hearing officer partiality claims listed in the class certification motion. The complaint also alleges that Defendants improperly based termination decisions on

12

statements made to hearing officers outside of the hearings. (*Id.* at ¶¶ 44, 63). These allegations properly alerted Defendants that their reliance on hearsay evidence as a basis for termination was being challenged by Plaintiffs. Accordingly, the Court finds that the motion for class certification does not raise any "new" claims.

## VI. CONCLUSION

For the reasons stated above, the Court finds that Plaintiffs have satisfied the Rule 23 requirements. Accordingly, Plaintiffs' Motion to Certify Class (Doc. No. 86) is **GRANTED**. Pursuant to Rule 23(c)(1)(B), a certification order defining the class and class claims, as well as appointing class counsel, follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHLEY THOMPSON and DEBORAH and DAVID SILLS, *on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> ALTOONA HOUSING AUTHORITY and *its Executive Director*, CHERYL JOHNS, *in her individual capacity*, and JOHN or JANE DOE, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION NO. 3:10-CV-312 <br> ) JUDGE KIM R. GIBSON <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## ORDER

**AND NOW**, this 2nd day of August 2012, upon consideration of Plaintiffs' Motion for Class Certification (Doc. No. 86), and in accordance with the Memorandum, **IT IS HEREBY ORDERED** that the motion is **GRANTED**. In accordance with Federal Rule of Civil Procedure 23, **IT IS FURTHER ORDERED:**

(1) **Class certification** – This action shall be maintained as a class action on behalf of the following class of plaintiffs: **all participants in Defendants' Section 8 Choice Housing Voucher Program whose benefits were terminated since March 25, 2009 pursuant to the policies/practices described below, and all participants who are presently or will in the future be subject to these policies/practices.**

(2) **Class claims** – This class action will address the legality of the following termination policies/practices allegedly employed by Defendants:

**(a) notifying participants that only written evidence would be**

14

considered at a benefit termination hearing;

(b) notifying participants that it is their burden at the hearing to prove why they should not be terminated;

(c) actually shifting the burden of proof at the hearing, thereby requiring participants to disprove the allegations against them;

(d) terminating benefits based solely on uncorroborated hearsay;

(e) using a partial, non-neutral decision maker at the hearing;

(f) basing termination decisions in part on evidence collected after the hearing was conducted;

(g) failing to comply with the Altoona Housing Authority's own rules and regulations when terminating benefits.

(3) **Class Counsel** – As discussed in the Memorandum, counsel of record for Plaintiffs are experienced in handling class actions and have ample knowledge of the applicable law. Additionally, as evinced by their litigation of this matter to date, counsel have done significant work identifying and investigating potential claims and have committed significant time and resources to representing the class. Accordingly, the Court appoints the following as class counsel pursuant to FED. R. CIV. P. 23(g)(1): **Donald Driscoll and Kevin L. Quisenberry, Community Justice Project, 429 Forbes Avenue, 1705 Allegheny Building, Pittsburg, PA 15219.**

BY THE COURT:

*/s/ Kim R. Gibson*
**KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE**